IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 3:24-cr-00383-2-AN |
| v. | **OPINION AND ORDER** |
| GIOVANNI SPIREA, | |
| Defendant. | |

**BECKERMAN, U.S. Magistrate Judge.**

The United States (the "Government") moved to detain Defendant Giovanni Spirea ("Spirea") on the grounds that Spirea "presents a danger to the community and a serious risk of flight." (Gov't Mot. Pretrial Detention ("Mot.") at 2, ECF No. 41.) The Court granted the Government's motion in part and detained Spirea as a risk of nonappearance, but took under advisement the question of whether the Court has the authority to detain Spirea as a risk of danger to the community. (ECF Nos. 48, 49.)

For the reasons discussed below, the Court finds that the Bail Reform Act (18 U.S.C. §§ 3141, *et seq.*) authorizes the detention of individuals as a danger to the community under 18 U.S.C. §§ 3142(e) and (g) even if the Court held the detention hearing solely on the ground that the individual presents a serious risk of flight under 18 U.S.C. § 3142(f)(2).

PAGE 1 – OPINION AND ORDER

**OPINION SUMMARY**

The Bail Reform Act authorizes a defendant's pretrial detention only in cases that qualify for a detention hearing under either 18 U.S.C. §§ 3142(f)(1) or (f)(2). If the prerequisites of those subsections are not present, the Court must release the defendant, either subject to release conditions or on their own recognizance. Once a detention hearing is triggered, under either (f)(1) or (f)(2), the Bail Reform Act provides only one option for the court's analysis at the detention hearing. Section 3142(e) provides that if, after holding a detention hearing, the court "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community," the court "shall" order detention. *See* 18 U.S.C. § 3142(e). In other words, once the detention hearing is triggered by (f)(1) or (f)(2), Section 3142(e) necessarily requires the court to consider whether the defendant presents a risk of nonappearance or danger to the community and whether there are conditions that can mitigate those risks. Thus, Section 3142(e) requires courts to consider both the risk of nonappearance and danger to the community regardless of whether (f)(1) or (f)(2) opened the gate to the detention hearing.

Here, once the Court held that the Government had met its burden of demonstrating by a preponderance of the evidence that Spirea presented a serious risk of flight under (f)(2), the Court was required to hold a detention hearing to determine whether there are conditions of release that will reasonably assure Spirea's appearance and the safety of the community. *See* 18 U.S.C. § 3142(e). The Court found that there are no conditions that will reasonably assure Spirea's appearance, but alternatively had the authority to detain Spirea as risk of danger to the community if the Court found that no conditions would reasonably assure the safety of the community.

**BACKGROUND**

A federal grand jury returned an indictment charging Spirea with conspiracy to defraud the United States in violation of 18 U.S.C. § 371 and unauthorized use of access devices in violation of 18 U.S.C. § 1029(a)(2). (Indictment, ECF No. 1.) The indictment alleges a multi-state criminal conspiracy that allegedly stole millions of dollars of benefits from hundreds of low-income and food-insecure individuals and families receiving Supplemental Nutrition Assistance Program benefits. (*Id.*) The Government filed a motion to detain Spirea and others on the grounds that "each presents a danger to the community and a serious risk of flight." (Mot. at 2, 4, first citing 18 U.S.C. § 3142(f)(2), and then citing 18 U.S.C. § 3142(e).) At his initial appearance, the Court detained Spirea as a risk of nonappearance, finding that "[n]o condition or combination of conditions will reasonably assure the appearance of defendant as required." (Det. Order, ECF No. 49.) The Court entered the detention order without prejudice to later review. (*Id.*)

At a review of detention hearing, the Court continued Spirea's pretrial detention on the ground that he presents a risk of nonappearance and there are no conditions that can mitigate that risk. (Hr'g Tr. at 31-34, ECF No. 115.) The Court based its detention order on the following risk factors: (i) the nature of the charged offenses reflect that Spirea has been involved in the alleged conspiracy for a lengthy period of time and has the ability quickly to make money without legal employment if he were to abscond from supervision (which was reflected in both the number of transactions in which he was allegedly involved as well as the amount of cash found in his residence); (ii) the weight of the evidence against Spirea strongly suggests that he is guilty of the alleged offenses, which is relevant to his motivation to flee; and (iii) Spirea's history and characteristics reflect that he leads a nomadic lifestyle, has only lived in Oregon for six or seven months, has ties to several family members who live abroad (including his mother who lives in

PAGE 3 – OPINION AND ORDER

Romania), his local ties include primarily family members who were also involved in the alleged conspiracy, and he has not obtained legal employment or paid taxes in the United States while awaiting the resolution of his asylum application; and (iv) Spirea is not a United States citizen and faces deportation if convicted. (*Id.*)

The Court did not evaluate whether Spirea also presents a risk of danger to the community, but instead asked the parties to submit supplemental briefing on whether the Bail Reform Act provides the Court with authority to detain Spirea as a risk of danger to the community where the detention hearing was authorized by 18 U.S.C. § 3142(f)(2) only. The parties submitted supplemental briefs on November 15, 2024. (ECF Nos. 141, 143.)

## DISCUSSION

## I.    THE BAIL REFORM ACT

The Court provides the following summary of the Bail Reform Act (sometimes referred to herein as the "Act"), as applied to this case and as a road map to govern future detention hearings in this district.[1]

### A.    Step One: Is a Detention Hearing Authorized Under (f)(1) or (f)(2)?

#### 1.    Applicable Law

Section 3142(f) of the Bail Reform Act outlines the circumstances in which the Court "shall" hold a detention hearing:

> Detention Hearing. — The judicial officer shall hold a hearing to determine whether any condition or combination of conditions set forth in subsection (c) of this section will reasonably assure the appearance of such person as required and the safety of any other person and the community—

---

[1] "At first glance, th[e Bail Reform Act] analysis appears simple. However, anyone with experience with the [Bail Reform Act] will tell you the statute functions more like a twisting labyrinth than an easily navigated roadway." *United States v. Cobix-Espinoza*, 655 F. Supp. 3d 584, 587 (E.D. Ky. Feb. 9, 2023).

(1)    upon motion of the attorney for the Government, in a case that involves—

    (A)    a crime of violence, a violation of section 1591, or an offense listed in section 2332b(g)(5)(B) for which a maximum term of imprisonment of 10 years or more is prescribed;

    (B)    an offense for which the maximum sentence is life imprisonment or death;

    (C)    an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. 801 et seq.), the Controlled Substances Import and Export Act (21 U.S.C. 951 et seq.), or chapter 705 of title 46;

    (D)    any felony if such person has been convicted of two or more offenses described in subparagraphs (A) through (C) of this paragraph, or two or more State or local offenses that would have been offenses described in subparagraphs (A) through (C) of this paragraph if a circumstance giving rise to Federal jurisdiction had existed, or a combination of such offenses; or

    (E)    any felony that is not otherwise a crime of violence that involves a minor victim or that involves the possession or use of a firearm or destructive device (as those terms are defined in section 921), or any other dangerous weapon, or involves a failure to register under section 2250 of title 18, United States Code; or

(2)    upon motion of the attorney for the Government or upon the judicial officer's own motion in a case, that involves—

    (A)    a serious risk that such person will flee; or

    (B)    a serious risk that such person will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness or juror.

18 U.S.C. § 3142(f).

///

It is now well settled in the Ninth Circuit that the Government may not seek a defendant's pretrial detention unless the (f)(1) or (f)(2) criteria are satisfied, despite the defendant's dangerousness. *See United States v. Twine*, 344 F.3d 987, 987 (9th Cir. 2003) ("We are not persuaded that the Bail Reform Act authorizes pretrial detention without bail based solely on a finding of dangerousness. This interpretation of the Act would render meaningless 18 U.S.C. § 3142(f)(1) and (2)."); *United States v. Figueroa-Alvarez*, 681 F. Supp. 3d 1131, 1135-36 (D. Idaho 2023) ("Absent one of these serious circumstances that would automatically trigger a detention hearing, a defendant must be released on personal recognizance, unsecured appearance bond, or conditions. This is true whether the defendant is otherwise dangerous." (first citing 18 U.S.C. § 3142(a); and then citing *Twine*)); *United States v. Subil*, No. 2:23-cr-00030-TL, 2023 WL 3866709, at *2 (W.D. Wash. June 7, 2023) ("The Government must then demonstrate that the defendant is eligible for a detention hearing. A defendant is eligible for a hearing only if the Government shows, by a preponderance of the evidence, that the case falls into one of the categories listed in 18 U.S.C. § 3142(f).") (citations omitted); *United States v. Thomsen*, No. 10 CR 2810-BEN, 2010 WL 11500890, at *2 (S.D. Cal. July 14, 2010) ("Defendant is not charged with an offense listed in 18 U.S.C. § 3142(f)(1), nor has there been any evidence presented that he is a serious risk to obstruct justice or engage in any of the other nefarious conduct described in 18 U.S.C. § 3142(f)(2)(B). Accordingly, pursuant to *Twine*, dangerousness by itself is insufficient to justify Defendant's detention. As illogical and incongruous as this sounds, this is how the [Bail Reform Act] reads and what *Twine* has held.").[2]

---

[2] Secondary sources are in accord. *See, e.g.*, Jefri Wood, The Bail Reform Act of 1984 (Federal Judicial Center 4th ed. 2022) ("FJC Handbook") at 18 ("A pretrial detention hearing may *only* be held if there is sufficient information to show that section 3142(f)(1) or (f)(2) applies to the defendant. Whenever the government seeks pretrial detention, the court should verify that the case involves at least one of the specific circumstances listed in section 3142(f). If

In other words, "detention hearings are authorized only if the defendant (i) is charged with one of five categories of serious crimes—crimes that, if the defendant were to recidivate while on pretrial release, pose the greatest risk to community safety; or (ii) presents a serious risk of flight, or a serious risk of obstruction or intimidation—acts that present the greatest risk to the integrity of the judicial process." *Figueroa-Alvarez*, 681 F. Supp. 3d at 1135. "Absent one of these serious circumstances that would automatically trigger a detention hearing, a defendant must be released on personal recognizance . . . or conditions." *Id.* at 1135-36 (citing 18 U.S.C. § 3142(a)). "Section 3142(f), then, imposes on the magistrate [judge] a gatekeeping function at initial appearance."[3] *Id.* at 1136 (citing *Subil*, 2023 WL 3866709, at *4).

---

not, a detention hearing is not authorized by the statute and the court must release the defendant with appropriate conditions.") (simplified); *id.* at 20-21 ("'Danger to the community' or a general allegation of dangerousness, for example, which is a factor to be considered *during* a detention hearing, is *not* a factor under section 3142(f) that authorizes a detention hearing to be held in the first place. . . . The question whether the defendant poses a danger to the safety of the community under subsection 3142(e) cannot be considered unless the defendant is found to be eligible for detention under subsection 3142(f).'") (citation omitted); Fed. Proc. L. Ed. § 22:1905 ("Evidence of a defendant's threat to the safety of other persons or to the community, standing alone, will not justify pretrial detention under the Bail Reform Act; it is also necessary to establish that the defendant's conduct involves one of the crimes enumerated in 18 U.S.C.[] § 3142(f).").

[3] As such, the Assistant U.S. Attorney should clearly indicate at the initial appearance if the Government is seeking a detention hearing under (f)(1) or (f)(2). The Court will then determine whether a detention hearing is authorized before holding a detention hearing. *See Subil*, 2023 WL 3866709, at *4 ("A recent study of federal pretrial detention identifies . . . a 'problematic feedback loop.' '[T]he prosecutor requests pretrial detention for reasons not authorized by the law, the defense attorney does not object, and the judge neither questions the prosecutor nor adheres to the statutory requirements, sometimes jailing people unlawfully.'" (quoting Alison Siegler, Freedom Denied: How the Culture of Detention Created a Federal Jailing Crisis 29 (2022))); FJC Handbook at 18 n.78 (noting that "[g]eneral allegations of 'dangerousness' or risk of nonappearance . . . are not factors under section 3142(f) and therefore do not provide a basis for holding a detention hearing"); *id.* ("In one study of cases between late 2018 and early 2019, however, 'prosecutors routinely requested detention at the Initial Appearance on the impermissible basis of 'danger to the community' or 'risk of flight,' and judges regularly granted those requests.'") (citation omitted).

2.    **Analysis**

As applied here, the Court must first determine whether it was authorized to hold a detention hearing under 18 U.S.C. § 3142(f). The Bail Reform Act requires the Government to present concrete information specific to the defendant to demonstrate that a case is eligible for a detention hearing under § 3142(f).[4] *See Figueroa-Alvarez*, 681 F. Supp. 3d at 1138 ("[T]he Government must present 'concrete information' not 'mere conclusory allegations.'") (citations omitted); *see also* FJC Handbook at 20 ("Under section 3142(f)(2)(A) the government must present evidence that *this* defendant presents a *serious* risk to flee, to obstruct justice, or to 'threaten, injure, or intimidate, or attempt to threaten, injure, or intimate, a prospective witness or juror.'").

"The Government must demonstrate serious risk of flight by a preponderance of the evidence to trigger a detention hearing under § 3142(f)(2)(A)." *Figueroa-Alvarez*, 681 F. Supp. 3d at 1138 (citations omitted); *see also Subil*, 2023 WL 3866709, at *4 (recognizing that the court must find, "by preponderance of the evidence, that a § 3142(f) category is present"). "More finely put, this means that the Government must demonstrate that it is more likely than not that there is a serious risk that the defendant will flee, not that it is more likely than not that the defendant will flee." *Figueroa-Alvarez*, 681 F. Supp. 3d at 1138 (citations omitted).

///

///

---

[4] "[D]efense counsel must be vigilant in ensuring that these requirements are followed." *Subil*, 2023 WL 3866709, at *4 (citation omitted); *id.* at *5 (finding that the defendant waived his right to object to a detention hearing where he did not oppose the Government's motion at the arraignment); *United States v. White*, No. 3:21-mj-04070, 2021 WL 2155441, at *6 (M.D. Tenn. May 27, 2021) (explaining that when the defendant does not challenge the Government's right to a detention hearing, the defendant has arguably waived or forfeited the right to object to a hearing).

(a)    **Enumerated Offenses (18 U.S.C. § 3142(f)(1))**

The indictment charges Spirea with conspiracy to defraud the United States in violation of 18 U.S.C. § 371 and unauthorized use of access devices in violation of 18 U.S.C. § 1029(a)(2). (Indictment, ECF No. 1.) There is no dispute that this case does not involve one of the (f)(1) enumerated offenses, and therefore (f)(1) did not authorize a detention hearing here.

(b)    **Serious Risk of Flight or Obstruction/Intimidation (18 U.S.C. § 3142(f)(2))**

The Government moved for a detention hearing under (f)(2) on the ground that Spirea presents a serious risk of flight, and the Court agreed.

As an initial matter, district courts have consistently found that a defendant's risk of "flight" means something different than his risk of "nonappearance." Magistrate Judge Raymond Patricco's thorough statutory analysis in *Figueroa-Alvarez* provides helpful guidance here.

In *Figueroa-Alvarez*, Judge Patricco examined an earlier district court opinion in *White*. *See Figueroa-Alvarez*, 681 F. Supp. 3d at 1137-38. In *White*, the court found that it "is clear that flight and nonappearance are not simply interchangeable names for the same concept, nor are they merely different degrees of the same type of risk." 2021 WL 2155441, at *10 (quoting Lauryn P. Gouldin, Defining Flight Risk, 85 U. Chi. L. Rev. 677, 683 (2018)). Rather, "[i]n the context of measuring and managing risks, many defendants who merely fail to appear differ in important ways from their fugitive cousins." *Id.* (citing Gouldin at 683). The *White* court further recognized that "[i]t well may be that someone can pose a risk of 'non-appearance' without posing a risk of 'flight.'" 2021 WL 2155441, at *8. "The latter term seems to connote intentional and active movement to put oneself beyond the supervision of the court and the reach of criminal proceedings; this connotation is not inherent in the notion of 'non-appearance,' a term broad enough to cover negligent or other unintentional, and not just active and intentional, failures to

appear." *Id.* "It would seem that 'risk of flight' is a subset of 'risk of non-appearance'—meaning that, depending on the circumstances suggesting a serious risk of non-appearance, a risk of non-appearance may not entail a risk of flight." *Id.*; *see also United States v. Runsdorf*, No. 22-8015-WM, 2022 WL 303548, at *4 (S.D. Fla. Jan. 24, 2022) ("And, the question whether there is a serious risk that the defendant will 'flee' is also distinct from the later inquiry whether conditions of release will reasonably assure the defendant's 'appearance' as required."); *United States v. Gibson*, 384 F. Supp. 3d 955, 965 (N.D. Ind. 2019) ("While Congress chose to use 'serious risk of flight' in subsection (f)(2)(A) to describe the limited scenario under which a defendant will face a detention hearing, Congress settled on very different language when describing the analysis courts must undertake once a detention hearing goes forward."). The court "agree[d] with this reasoning" and held that "risk of flight is distinguishable from, and more narrow than, risk of non-appearance." *Figueroa-Alvarez*, 681 F. Supp. 3d at 1137.

The court then turned to the meaning of "serious risk of flight." *See id.* (noting that "[b]ecause courts interpreting the Act have conflated risk of flight with risk of non-appearance, risk of flight has evaded definition" (citing *White*, 2021 WL 2155441, at *10)). After comparing different interpretations, the court "agree[d] that flight—as that term is commonly understood—involves active movement" "[b]ut flight is not limited to movement outside of the jurisdiction; it can also involve secreting oneself within the jurisdiction by moving to a different locale therein." *Id.* (first citing Nolan, Joseph R. & Nolan-Haley, Jacqueline M., Black's Law Dictionary, at 639-40 (6th ed. 1990) ("Black's Law Dictionary") (defining "flight from prosecution" as "[t]he evading of the course of justice by voluntarily withdrawing one's self in order to avoid arrest or detention, or the institution or continuation of criminal proceedings, regardless of whether one leaves [the] jurisdiction"); and then citing *White*, 2021 WL 2155441, at *10 (acknowledging that

a defendant can "actually or at least metaphorically [be] 'on the run' [ ] within the jurisdiction'")).
"Moreover, flight must be intentional, and not the result of mere negligence or mistake." *Id.* (first
citing *White*, 2021 WL 2155441, at *8; and then citing *Cobix-Espinoza*, 655 F. Supp. 3d at 588-
89). "Finally, the risk of flight referenced in the Act is a 'serious' risk of flight." *Id.* at 1138
("'Serious' has a plain meaning." (citing, *inter alia*, Black's Law Dictionary at 1367 (defining
"serious" as "important, weighty, momentous, grave, great")).

"Taken together, then, a 'serious risk of flight' under § 3142(f)(2)(A) is a great risk—
beyond average—that the defendant will intentionally and actively move within or outside the
jurisdiction to avoid court proceedings or supervision." *Figueroa-Alvarez*, 681 F. Supp. 3d at
1138. The Court adopts this well-reasoned interpretation of "serious risk of flight."

For the reasons discussed in detail at the review of detention hearing (and summarized
above), the Court found that the Government demonstrated by a preponderance of the evidence,
including concrete factual information, that Spirea presents a serious risk of flight. The Court's
finding therefore opened the gate to a detention hearing.

**B.      Step Two: The Detention Hearing Under 18 U.S.C. §§ 3142(e) and (g)**

**1.      Applicable Law**

Section (e) of 18 U.S.C. § 3142 governs "detention," and instructs that:

> If, after a hearing pursuant to the provisions of subsection (f) of this section, the
> judicial officer finds that no condition or combination of conditions will
> reasonably assure the appearance of the person as required and the safety of any
> other person and the community, such judicial officer *shall* order the detention of
> the person before trial.

18 U.S.C. § 3142(e) (emphasis added).[5] "At step two—after the Court has determined that the
United States is entitled to a detention hearing under § 3142(f)—the Court must conduct a

---

[5] "[A] finding that no conditions will reasonably assure the safety of any other person or
the community must be supported by clear and convincing evidence" and a finding that no

detention hearing to determine whether any condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any person and the community under § 3142(e)." *Cobix-Espinoza*, 655 F. Supp. 3d at 589. "If no set of conditions can reasonably assure appearance and safety, the Court must order detention." *Id.* "The Court considers the factors under § 3142(g) in making that determination." *Id.*

Section (g) provides the "factors to be considered" at the detention hearing:

The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning—

(1)    the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;

(2)    the weight of the evidence against the person;

(3)    the history and characteristics of the person, including—

    (A)    the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

    (B)    whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4)    the nature and seriousness of the danger to any person or the community that would be posed by the person's release. In considering the conditions of release described in subsection (c)(1)(B)(xi) or (c)(1)(B)(xii) of this section, the judicial officer may upon his own motion, or shall upon the motion of the Government, conduct an inquiry into the source of the property to be designated for potential forfeiture or offered as collateral to

---

conditions will reasonably assure the defendant's appearance "must be supported only by a preponderance of the evidence." FJC Handbook at 27 (collecting cases).

secure a bond, and shall decline to accept the designation, or the use as collateral, of property that, because of its source, will not reasonably assure the appearance of the person as required.

18 U.S.C. § 3142(g).

### 2.    Analysis

The Court found that Spirea presents an unmitigable risk of nonappearance and therefore entered a detention order, but did not reach the question of whether Spirea also presents an unmitigable risk of danger to the community.

#### a.    Risk of Nonappearance

The parties do not dispute that the court must evaluate the defendant's risk of nonappearance under Sections (e) and (g) regardless of whether (f)(1) or (f)(2) opened the detention hearing gate. Specifically, Section (e) instructs that the court must evaluate whether there are conditions that "will reasonably assure the appearance of the person as required" by considering the factors listed in Section (g). *See* 18 U.S.C. § 3142(e). If not, the court "shall order the detention of the person before trial." *Id.*

As discussed above, courts must determine at the detention hearing whether the defendant presents a risk of nonappearance, not a risk of flight. *See Cobix-Espinoza*, 655 F. Supp. 3d at 588 ("Notably the 'risk of flight' under subsection (f)(2)(A) is different from the 'risk of nonappearance' that subsection (e) directs the Court to assess at a detention hearing.") (citation omitted); *Gibson*, 384 F. Supp. 3d at 965 ("'[R]isk of flight' is not the proper standard to apply when deciding to detain an individual."). "Risk of flight or more precisely 'serious risk of flight' is only what allows the government to move for detention[.]" *Id.* ("While Congress chose to use 'serious risk of flight' in subsection (f)(2)(A) to describe this limited scenario under which a defendant will face a detention hearing, Congress settled on very different language when describing the analysis courts must undertake once a detention hearing goes forward."). In

subsection (e), "Congress did not use the term 'flight' at all" but instead "mandated that courts look to whether the government has met its burden to show that there is no condition or combination of conditions that will 'reasonably assure the appearance of the person as required.'" *Id.* (quoting 18 U.S.C. § 3142(g)).

The Court notes that a detention hearing on "risk of nonappearance" grounds is therefore not superfluous or cumulative following the Court's finding that the defendant presents a "serious risk of flight." As Judge Patricco found in *Figueroa-Alvarez*, "a detention hearing involves more than just demonstrating risk of non-appearance" because it also "concerns whether 'any condition or combination of conditions . . . will reasonably assure the appearance of such person as required and the safety of any other person and the community. . . .'" *Figueroa-Alvarez*, 681 F. Supp. 3d at 1139 n.5 (citations omitted). "Thus, a defendant determined to be a serious risk of flight at the gatekeeping stage may nonetheless argue at the subsequent detention hearing that he or she should be released on conditions." *Id.*

Here, the Court evaluated the statutory factors listed at 18 U.S.C. § 3142(g)—the nature and circumstances of the offense charged, the weight of the evidence,[6] and Spirea's history and characteristics—and found that the government met its burden of demonstrating by a preponderance of the evidence that there are no conditions that will reasonably assure Spirea's appearance as required. Accordingly, the Court entered an order of detention and, to date, Spirea has not appealed the detention order.

---

[6] "Under the Act, the weight of the evidence is the least persuasive factor." *Figueroa-Alvarez*, 681 F. Supp. 3d at 1141 (citing *United States v. Motamedi*, 767 F.2d 1403, 1408 (9th Cir. 1985)). "That is because any consideration of the weight of the evidence must acknowledge the defendant's pretrial presumption of innocence." *Id.* "Notwithstanding the presumption of innocence, if the weight of the evidence against [a] defendant is objectively strong, the defendant may perceive a likelihood of conviction, giving him or her a greater incentive to flee." *Id.*

### 3.    Risk of Danger to the Community

At the review of detention hearing, the Court did not evaluate whether Spirea also presents a risk of danger to the community, but instead asked the parties to submit supplemental briefing on whether courts are authorized to detain defendants on danger grounds where—as here—the detention hearing is held pursuant to (f)(2) only.

Courts are divided on whether they may detain a defendant on danger grounds where a detention hearing is triggered only under (f)(2). *See Subil*, 2023 WL 3866709, at *5 n.4 ("Authority is divided on whether a court's detention analysis under §§ 3142(e) and (g) is limited by the basis for the detention hearing in § 3142(f)."); *Cobix-Espinoza*, 655 F. Supp. 3d at 589-90 ("[I]f the basis for holding a detention hearing is the defendant's serious risk of flight under § 3142(f)(2)(A), is the Court limited to considering only evidence of nonappearance that relates specifically to the risk of flight or, alternatively, can the Court consider the general risks of nonappearance and danger in determining whether to order detention under § 3142(e)? Courts are generally split on this point[.]") (simplified); *Gibson*, 384 F. Supp. 3d at 960 (questioning whether, "after holding a detention hearing on the basis that the defendant is a serious risk of flight, if a judge is convinced that the government has not met its burden of showing that there is no condition or combination of conditions that can reasonably assure the defendant's appearance as required, is that the end of the analysis, or is the judge to move on to consider danger to the community as the sole reason to detain the defendant pending trial?" and noting that "[t]he Court's limited review of cases suggests this is an unresolved issue") (citation omitted). The Ninth Circuit has not yet provided guidance.

For the reasons discussed below, this Court now joins other district courts in the Ninth Circuit and holds that once a detention hearing is authorized, courts must evaluate both the defendant's risk of nonappearance *and* risk of danger to the community regardless of whether the

PAGE 15 – OPINION AND ORDER

detention hearing was triggered by (f)(1) or (f)(2). *See, e.g.,* Figueroa-Alvarez, 681 F. Supp. 3d at 1139 n.5 ("[A] defendant determined to be a serious risk of flight at the gatekeeping stage may nonetheless argue at the subsequent detention hearing that he or she should be released on conditions. And the Government may present evidence of dangerousness not considered by the court at the gatekeeping stage." (first citing United States v. Holmes, 438 F. Supp. 2d 1340, 1351 (S.D. Fla. 2005); and then citing Cobix-Espinoza, 655 F. Supp. 3d at 591-92)); Subil, 2023 WL 3866709, at *5 ("But while 'serious risk of flight' may trigger a detention hearing, the inquiry for a court considering a detention order is 'after a hearing pursuant to § 3142(f), whether the judicial officer finds that no condition or conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community.' This inquiry turns on the § 3142(g) factors.") (simplified).

The two oft-cited cases on either side of this issue—both outside the Ninth Circuit—are *Holmes* and *Himler. Compare* Holmes, 438 F. Supp. 2d at 1351 ("[T]his Court concludes that dangerousness as a grounds for detention is not excluded in cases involving detention hearing(s) brought under (f)(2).") *and* United States v. Himler, 797 F.2d 156, 160 (3d Cir. 1986) ("The government . . . asserts that once a hearing is authorized any evidence of danger to the community from recidivism may be relied upon to justify pretrial detention. We disagree."); *see also* Subil, 2023 WL 3866709, at *5 n.4 ("Under the '*Holmes* interpretation,' once a hearing is granted on any basis, a court may consider both risk of nonappearance and safety. Under the '*Himler* interpretation,' the court's analysis is limited by the basis for the hearing." (first citing *Holmes*; and then citing *Himler*)); Cobix-Espinoza, 655 F. Supp. 3d at 590 ("Two interpretations of the [Bail Reform Act] answer this question differently. As one court described it, the two approaches are described as the *Holmes* interpretation and the *Himler* interpretation.") (citation

omitted); *Gibson*, 384 F. Supp. 3d at 960 ("Two interpretations of the Bail Reform Act, which the court will call the *Holmes* and the *Himler* interpretations . . . answer this question differently." (first citing *Holmes*; and then citing *Himler*)).

In *Holmes*, Magistrate Judge James Hopkins held that subsection (f) determines only whether the United States is permitted to move for detention: "Per *Holmes*, once the Section 3142(f) criterion is met, the Court must then consider . . . the defendant's risk of nonappearance or danger to another person or the community under § 3142(e)." *Cobix-Espinoza*, 655 F. Supp. 3d at 590 (citing *Holmes*). In other words, "the Court's analysis under § 3142(e) is not tailored by the basis for the hearing under § 3142(f); the Court simply considers whether any set of conditions can reasonably assure the appearance of the defendant and the safety of another person and the community regardless of the basis for the hearing." *Id.* ("As *Holmes* stated, for example, dangerousness as grounds for detention is not excluded in cases involving detention hearings brought under (f)(2) [and] [t]his conclusion is based on a plain reading of the statute's unambiguous language and structure, the Act's legislative history, and the [case law]."); *Gibson*, 384 F. Supp. 3d at 960 ("In [*Holmes*'] view, once a prerequisite [to a detention hearing] is met, a court holds a detention hearing and may consider danger regardless of the (f) criterion under which the hearing is held.").

As other courts have recognized, *Holmes* and its progeny reflect "a strict, plain text interpretation" of the Bail Reform Act. *See Cobix-Espinoza*, 655 F. Supp. 3d at 590 ("[T]he *Holmes* court and its progeny base this position on a strict, plain text interpretation of the [Bail Reform Act]."). "For example, while Congress elected not to use nonappearance and instead used the phrase 'serious risk of flight' for (f)(2)(A), Congress likewise specifically elected to emphasize nonappearance and danger generally three times in subsections (e), (f), and (g) despite

the limited language in (f)(1) and (f)(2)." *Cobix-Espinoza*, 655 F. Supp. 3d at 590; *Gibson*, 384 F. Supp. 3d at 960 ("A court following the *Holmes* interpretation could point out that Congress indicated three times—in subsections (e), (f), and (g) of section 3142—that a court, when determining whether to detain an individual, should consider the danger that the defendant poses to the community." (citing *Holmes*)). "If Congress wanted the basis for detention under subsection (f) to later limit considerations under (e) and (g), it could have expressly said as much." *Cobix-Espinoza*, 655 F. Supp. 3d at 590.

The *Holmes* line of cases also find support in the Bail Reform Act's legislative history. *See id.* ("*Holmes* and its progeny also argue such a conclusion is supported by the legislative history."). "Without question and as referenced above, Congress crafted 3142(f) such that it 'serve[s] to limit the types of cases in which detention may be ordered prior to trial' and further, that the [Bail Reform Act] itself is directed toward 'a small but identifiable group of particularly dangerous defendants.'" *Id.* at 590-91 (citing S. Rep. No. 225, at 20, and 6, U.S.C.C.A.N. 1984, pp. 3203, 3188). "The *Holmes* interpretation concludes that subsection (f) is the narrow filter or gatekeeper intended by Congress" and "once that threshold is satisfied, Congress plainly intended for the Court to then consider all nonappearance and danger risks." *Id.* at 591. The *Holmes* line of cases are "convinced that Congress intended that dangerousness be considered in all instances whether arising under subsection (f)(1) or (f)(2)." *Id.* at 590.

"By contrast, the *Himler* interpretation . . . provides that the basis for detention under § 3142(f) constricts the Court's analysis under § 3142(e) and (g)." *Id.* at 591 (first citing *Gibson*, 384 F. Supp. 3d at 955, 962; and then citing *United States v. Chavez-Rivas*, 536 F. Supp. 2d 962, 967 (E.D. Wis. 2008)). "For example, if the United States successfully moves for detention under § 3142(f)(2)(A) on the basis that the case involves a serious risk of flight, then the Court

may only consider flight risks in its (e) and (g) analysis and must forgo any broader consideration of nonappearance and danger." *Id.* "Like the *Holmes* interpretation, *Himler* and its progeny cite to the same legislative history from Congress imploring courts to construe (f) narrowly." *Id.* The *Himler* interpretation also "points to the broader policy considerations that may result with the *Holmes* interpretation[,]" namely that it will lead to excessive pretrial detention in contravention of the Bail Reform Act's goals. *Id.* (citing *Gibson*, 384 F. Supp. 3d at 963).

This Court agrees with the majority of district courts "find[ing] *Holmes*'s statutory construction more consistent with the text, legislative history, and the overarching policy considerations of the [Bail Reform Act]." *Cobix-Espinoza*, 655 F. Supp. 3d at 591. "[The court] thus adopts [Holmes'] interpretation with respect to detention hearings authorized under § 3142(f)(2)(A)." *Id.* "Where, as here, the United States moves for and is entitled to a detention hearing solely on the basis of the defendant's serious risk of flight under § 3142(f)(2)(A), the Court may examine, and order detention based on, the defendant's risks of nonappearance and danger." *Id.*

First, with respect to the statutory textual analysis, "[b]oth *Holmes* and *Himler* agree that § 3142(f), by its own language, limits the types of cases in which the United States can seek detention by providing that the Court shall hold a detention hearing in cases involving one of the seven circumstances listed in subsection (f)(1) and (f)(2)." *Id.* "Importantly, § 3142(f) provides this limitation while still directing the Court to determine at the hearing, once it finds that the case involves one of the circumstances in (f)(1) or (f)(2) is present, 'whether any condition or combination of conditions . . . will reasonably assure the appearance of such person as required and the safety of any person and the community[.]'" *Id.* at 591-92 (citing 18 U.S.C. § 3142(f)).

PAGE 19 – OPINION AND ORDER

"Thus, 'the structure of subsection (f) indicates that Congress's aim was not to constrain the basis for detention to the grounds asserted for holding a detention hearing.'" *Id.* at 592 (quoting *United States v. Alcorta-Ambriz*, No. 20-mj-01328, 2020 WL 5709149, at *5 (D. N.M. Sept. 24, 2020)). "Rather, the Court is directed without limitation to assess the defendant's risk of nonappearance and danger to the community in determining whether detention is appropriate, regardless of the basis for the detention hearing." *Id.* ("Similarly, other provisions of § 3142 direct the Court to hold a hearing to consider the defendant's risks of nonappearance and danger without limitation or any reference to the underlying basis for the hearing under subsection (f)[.]" (citing 18 U.S.C. § 3142(c), (e)(1), and (g))).

Further, "[t]he *Holmes* interpretation gives full effect to the limiting provisions of subsection (f) and the broader directives in these other provisions to consider both nonappearance and danger at the detention hearing." *Id.* (citing *Lamie v. U.S. Tr.*, 540 U.S. 526, 534 (2004)). "In doing so, 'no clause, sentence, or word of a statute should be read as superfluous, void, or insignificant.'" *Id.* (citation omitted). "And *Holmes*'s construction of subsections (f) and (e) makes sense when considering that (f) simply limits the circumstances in which a Court can consider a defendant's risk of nonappearance and danger." *Id.* (citing *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 371 (1988)).

"By contrast, the *Himler* interpretation overrides the plain language of subsections (c), (e), (f), and (g) and reads in a significant limitation on the Court's detention analysis that simply does not appear in the text." *Id.* "Stated another way, the *Himler* approach construes subsections (f)(1) and (f)(2) in a manner consistent with the plain meaning of their text, but then ignores the text of other provisions plainly directing the court to engage in a full danger and nonappearance analysis at the detention hearing." *Id.* at 592-93 ("Had Congress intended for courts to tailor the

analysis of the defendant's risk of danger or nonappearance to the basis for the hearing under subsection (f) in the way that *Himler* suggests, it had several opportunities to say so. Yet, it did not. Consequently, a textual reading of the [Bail Reform Act] fully supports the *Holmes* interpretation.") (citation omitted).

Second, the legislative history of the Bail Reform Act also supports *Holmes*'s interpretation. "The congressional record includes statements from senators indicating that the role of (f)(1) is to outline specific 'categor[ies] of prosecutions for which pretrial detention on grounds of dangerousness would be authorized.'" *Id.* at 593 (citing 131 Cong. Rec. S00000-12, 1985 WL 707152, at *52). "As for (f)(2), those categories preserve the 'inherent right of the trial court to protect the integrity of the judicial process' in cases specifically involving serious flight or obstruction risks." *Id.* (citing 131 Cong. Rec. S00000-12, 1985 WL 707152, at *53). "Under the *Holmes* interpretation, this legislative history further supports applying (f)(1) and (f)(2) narrowly." *Id.* "Yet this history in no way suggests that (f)(1) and (f)(2) negate (c), (e), (f), and (g), which all require the court to consider both nonappearance and danger." *Id.* ("Like with the textual evidence, the *Himle*r interpretation transposes Congress's intent for (f)(1) and (f)(2) onto other provisions without any congressional suggestion of the kind."). "The *Holmes* interpretation both honors Congress's intent concerning (f)(1) and (f)(2) without allowing that intent to somehow distort other provisions." *Id.*

Third, the Court is not concerned that the *Holmes* reading is contrary to the due process and excessive bail concerns that the Supreme Court highlighted in *United States v. Salerno*, 481 U.S. 739, 746 (1987). *See Gibson*, 384 F. Supp. 3d at 963 (expressing concern that "[t]he *Holmes* interpretation runs into the very problem *Salerno* indicated was not present in the Bail Reform Act" i.e., "this broad reading of the Bail Reform Act has the potential to apply the Act to a nearly

limitless range of cases"). "The emphasis by the Supreme Court in *Salerno* was to limit the type

of cases to which the United States could even seek detention[,]" but "the *Holmes* interpretation

applies (f)(1) and (f)(2) narrowly, thereby limiting, just as dictated by *Salerno*, the range of cases

in which the United States can seek pretrial detention." *Cobix-Espinoza*, 655 F. Supp. 3d at 594

("Again, the *Himler* interpretation lets the fair concerns of *Salerno* regarding (f)(1) and (f)(2) run

amok on the other provisions of the [Bail Reform Act] without any textual or legislative support

for permitting such statutory bedlam."). "Subsection (f) serves to strictly limit the cases in which

the United States can request a detention hearing." *Id.* at 587-88 (citations omitted); *see also*

*Subil*, 2023 WL 3866709, at *4 ("The § 3142(f) categories are not mere incantations that will

conjure a hearing upon their simple utterance. The Act requires that the Government make a

factual showing to justify why it should be given a shot at detention.") (citations omitted).

"Applying th[e] preponderance standard at the gatekeeping stage—and requiring that it be

satisfied by concrete information in the record—gives full effect to the presumption of pretrial

liberty that Congress and the Supreme Court intended in most cases." *Figueroa-Alvarez*, 681 F.

Supp. 3d at 1139 (citing *Salerno*, 481 U.S. at 751 ("In our society liberty is the norm, and

detention prior to trial or without trial is the carefully limited exception.")); FJC Handbook at 19

("Because detention may be ordered under section 3142(e) only after a detention hearing

pursuant to subsection (f), the requisite circumstances for invoking a detention hearing in effect

serve to limit the types of cases in which detention may be ordered prior to trial.").

      The Court therefore withdraws the concerns it has previously expressed that requesting

detention on danger grounds in a case involving only unenumerated offenses is an inappropriate

"back door" application of (f)(2). As discussed, the Court will hold a detention hearing only if

the Government presents concrete factual information specific to the defendant demonstrating by

a preponderance of the evidence that the defendant is a serious risk of flight. If the Government can meet this difficult burden in a case involving only unenumerated offenses, it means that the Court should have serious concerns that the defendant will flee, thereby allowing the individual to abscond from pretrial supervision and continue to engage in criminal conduct. Although Section 3142(f) prohibits pretrial detention in most cases involving unenumerated offenses, for the narrow group of defendants presenting a serious risk of flight, Congress deemed it appropriate for the Court also to evaluate the defendant's risk of danger to the community—even if only economic in nature[7]—before releasing the defendant. There is nothing irrational nor absurd about this reading of the Bail Reform Act.

For all of these reasons, the Court follows the other district courts that have adopted the *Holmes* interpretation, and finds that a detention order under Sections 3142(e) and (g) may be based on the defendant's risk of nonappearance or danger to the community regardless of whether the detention hearing gate was opened by (f)(1) or (f)(2). *See, e.g.*, *Figueroa-Alvarez*, 681 F. Supp. 3d at 1139 n.5 ("[A] defendant determined to be a serious risk of flight at the gatekeeping stage may nonetheless argue at the subsequent detention hearing that he or she should be released on conditions. And the Government may present evidence of dangerousness not considered by the court at the gatekeeping stage.") (citations omitted); *Cobix-Espinoza*, 655 F. Supp. 3d at 594 ("Accordingly, the Court adopts the *Holmes* interpretation, and holds that its

---

[7] There should be no dispute that "economic" danger is an appropriate ground for detention. *See FJC Handbook at 28* ("Defendants who qualify for a detention hearing under section 3142(f) may be detained because of the risk of danger to the community even where there is no showing that they are likely to engage in physical violence. . . . The Ninth Circuit recognizes that economic danger to the community may require detention." (citing *United States v. Reynolds*, 956 F.2d 192, 192-93 (9th Cir. 1992)) (holding that "danger may, at least in some cases, encompass pecuniary or economic harm," and agreeing that a defendant convicted of thirteen counts of mail fraud posed an economic or pecuniary danger to the community)).

detention decision under § 3142(e) may properly be grounded in [the defendant's] general risk of nonappearance and danger."); *Subil*, 2023 WL 3866709, at *5 ("But while 'serious risk of flight' may trigger a detention hearing, the inquiry for a court considering a detention order is 'after a hearing pursuant to § 3142(f), whether the judicial officer finds that no condition or conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community.' This inquiry turns on the § 3142(g) factors.") (simplified); *see also Alcorta-Ambriz*, 2020 WL 5709149, at *4 ("Per the structure of the [Bail Reform Act], however, there is no choice when it comes to determining if detention is appropriate—the conclusion is based on risk of flight and danger to the community. Put more simply, even if a detention hearing is predicated only on risk of flight, the detention decision must be based on a consideration of both risk of flight and danger to community."); *United States v. Hamade*, No. CR152373JRTBRT, 2019 WL 7283990, at *5 (D. Minn. Dec. 27, 2019) ("[*Himler*] has not been adopted by the Eighth Circuit and is inconsistent with the statutory text of § 3142." (citing *Holmes*)); *United States v. Castellanos-Almendares*, No. 19-CR-80144, 2019 WL 3937862, at *2 (S.D. Fla. Aug. 20, 2019) ("This Court agrees with the *Holmes* court."); *Thomsen*, 2010 WL 11500890, at *3 ("[D]angerousness can support detention when coupled with an appropriate finding that a defendant is also a serious risk of flight.").[8]

Here, the Court did not evaluate whether Spirea presents a risk of danger to the community, or whether conditions exist that would mitigate any risk of danger. However, in light of the Court's finding that Spirea presents an unmitigable risk of nonappearance, the question as

---

[8] *But see Gibson*, 384 F. Supp. 3d at 962 ("While cognizant of conflicting cases on the issue, this Court finds that detention motions under (f)(2)(A) cannot result in a detention order solely on ground of danger to the community."); *Chavez-Rivas*, 536 F. Supp. 2d at 968 ("I conclude that detention as a danger is permitted only in cases covered by § 3142(f)(1).").

applied to this case is moot unless Spirea appeals this Court's detention order to the district judge.

## CONCLUSION

For the reasons stated, the Court reaffirms and clarifies its prior order detaining Spirea as a risk of nonappearance under 18 U.S.C. §§ 3142(e), (f)(2), and (g), and finds that the Court has the authority to detain a defendant as a risk of danger to the community even if the detention hearing is triggered only by a finding that the defendant presents a serious risk of flight under 18 U.S.C. § 3142(f)(2).

**IT IS SO ORDERED.**

DATED this 27th day of November, 2024.

_____
HON. STACIE F. BECKERMAN
United States Magistrate Judge